# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Roger Coleman #A739451 § | | Case Number: |
| Belmont Correctional Institute § | | |
| P.O. Box 540 § | | |
| St. Clairsville, OH 43950 § | | |
| Plaintiff, § | | |
| § | | Judge |
| v. § | | |
| § | | Magistrate |
| Corrections Officer Legmah § | | |
| c/o Ohio Department of Rehabilitation § | | JURY DEMAND ENDORSED HEREON |
| & Correction, Pickaway Correctional § | | |
| Institution § | | |
| 11781 State Rt. 762 § | | |
| Orient, OH 43146 § | | |
| § | | |
| Lieutenant Burgh § | | |
| c/o Ohio Department of Rehabilitation § | | |
| & Correction, Pickaway Correctional § | | |
| Institution § | | |
| 11781 State Rt. 762 § | | |
| Orient, OH 43146 § | | |
| § | | |
| Warden Emma Collins § | | |
| c/o Ohio Department of Rehabilitation § | | |
| & Correction, Pickaway Correctional § | | |
| Institution § | | |
| 11781 State Rt. 762 § | | |
| Orient, OH 43146 § | | |
| § | | |
| Director Annette Chambers-Smith, § | | |
| Ohio Department of Rehabilitation & § | | |
| Correction, Pickaway Correctional § | | |
| Institution § | | |
| 4545 Fisher Road, Suite D § | | |
| Columbus, OH 43228 § | | |
| § | | |
| Assistant Director Stuart Hudson, Ohio § | | |
| Department of Rehabilitation & § | | |
| Correction, Pickaway Correctional § | | |
| Institution § | | |

| | |
|---|---|
| 4545 Fisher Road, Suite D | § |
| Columbus, OH 43228 | § |
| | § |
| State of Ohio, Ohio Department of | § |
| Rehabilitation & Correction, Pickaway | § |
| Correctional Institution | § |
| 4545 Fisher Road, Suite D | § |
| Columbus, OH 43228, | § |
| | § |
| Correction Officers John and Jane Does | § |
| 1 to 25 | § |
| c/o Ohio Department of Rehabilitation | § |
| & Correction, Pickaway Correctional | § |
| Institution | § |
| 11781 State Rt. 762 | § |
| Orient, OH 43146, and | § |
| | § |
| State of Ohio, Ohio Department of | § |
| Medicaid | § |
| Ohio Tort Recovery Unit | § |
| 50 W. Town St., Ste. 400 | § |
| Columbus, OH 43215 | § |
| | § |
|        Defendants | § |
| | § |

## COMPLAINT

Now comes Plaintiff Roger Coleman ("Mr. Coleman"), by and through his undersigned counsel, and for his timely filed *Complaint* against the above captioned defendants, Mr. Coleman hereby avers and claims as follows:

### JURISDICTION, VENUE AND STATUTE OF LIMITATIONS

1. This Honorable Court has jurisdiction over this ripe case and controversy pursuant to 28 U.S.C. §1331.

2

2. This Honorable Court has supplemental jurisdiction over any state law claims in this ripe case and controversy pursuant to 28 U.S.C. §1367.

3. This matter is timely filed within the pertinent statute of limitations, including but not limited to R.C. §§ 2305.09, 2305.10, 2305.111(B).

4. The last known address of each defendant is as set forth in the caption, such that venue is proper with this Honorable Court.

5. The Ohio Department of Medicaid may have a subrogation and/or reimbursement interest in the resolution of the instant dispute under the applicable law given medical benefits that have been paid or may be paid by Ohio Department of Medicaid on the behalf of Mr. Coleman related to his injuries alleged herein.

6. The Ohio Department of Medicaid regularly conducts business in Ohio and its principal office is located at the address captioned above.

7. Actions and omissions giving rise to the instant dispute occurred in Pickaway County Ohio, such that venue is proper with this Honorable Court.

## STATEMENT OF FACTS

8. Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

9. On July 13, 2020, Mr. Coleman was an inmate at the State of Ohio, Ohio Department of Rehabilitation & Correction, Pickaway Correctional Institution at the address captioned above.

10. On July 13, 2020, at approximately 3:00 to 3:30 pm, Mr. Coleman had just ended a phone call on one of the said prison's phones that are set up around the common area for the prisoners to use.

11. When Mr. Coleman got off the phone, Corrections Officer Legmah ("Officer Legmah") asked Mr. Coleman where Mr. Coleman's face mask was, to which Mr. Coleman responded that Mr. Coleman did not have a mask.

12. Officer Legmah went and got Mr. Coleman a mask.

13. Upon Officer Legmah's return, Mr. Coleman noticed that Officer Legmah seemed agitated due to the fact that other inmates were throwing food around.

14. Upon information and belief, other inmates threw food on Officer Legmah.

15. The agitated Officer Legmah escorted Mr. Coleman back to the recreation area.

16. Upon seeing the recreation door open Officer Legmah became more upset and agitated.

17. Mr. Coleman tried to explain to Officer Legmah that Lieutenant Burgh said that the inmates were allowed to keep the "rec" door open, to which Officer Legmah responded, "This is my house and I'm keeping it closed."

18. Officer Legmah then pulled out Officer Legmah's mace and began to move the same towards Mc. Coleman's face.

19. Mr. Coleman thought Officer Legmah was going to mace Mr. Coleman in the face causing Mr. Coleman to raise Mr. Coleman's hands to cover Mr. Coleman's face.

20. Mr. Coleman never struck Officer Legmah.

21. Mr. Coleman never appeared to strike Officer Legmah.

22. Mr. Coleman never threatened to strike Officer Legmah.

23. Mr. Coleman never threw food at Officer Legmah.

24. Mr. Coleman informed Officer Legmah that Officer Legmah is not allowed to spray mace into Mr. Coleman's face for merely reciting that Lieutenant Burgh said that the inmates were allowed to keep the "rec" door open.

25. Had Mr. Coleman not covered Mr. Coleman's face, upon information and belief, Officer Legmah would have sprayed Mr. Coleman's face with mace.

26. Mr. Coleman then put Mr. Coleman's hands on the prison wall to evidence Mr. Coleman's submission and to further demonstrate that Mr. Coleman was not a threat to Officer Legmah.

27. At all times, Mr. Coleman complied with Officer Legmah's orders.

28. Without any provocation, Officer Legmah then punched Mr. Coleman in the face.

29. The force of Officer Legmah's punch to Mr. Coleman's face caused Mr. Coleman to stumble a few feet away from the location where the punch occurred.

30. Officer Legmah then approached the dazed Mr. Coleman, grabbed Mr. Coleman, and slammed Mr. Coleman to the ground.

31. Once Mr. Coleman was slammed to the ground, Officer Legmah twisted Mr. Coleman's arm as Officer Legmah hand cuffed Mr. Coleman.

32. Officer Legmah handcuffed Mr. Coleman's hands so tight that Mr. Coleman's hands turned purple from lost circulation.

33. Mr. Coleman repeatedly complained that the hand cuffs were too tight and were cutting off the circulation in his hands.

34. Officer Legmah refused to loosen the handcuffs on Mr. Coleman.

35. Lieutenant Burgh asked Mr. Coleman what had happened, and Mr. Coleman told Lieutenant Burgh that Officer Legmah had assaulted Mr. Coleman, slammed Mr. Coleman to the ground, and handcuffed Mr. Coleman without any provocation.

36. Lieutenant Burgh did not call for assistance for Mr. Coleman, but instead denied Mr. Coleman's requests for medical attention and locked Mr. Coleman in his cell without medical care.

37. When Mr. Coleman was allowed to present to the infirmary, Mr. Coleman reported injuries to his right arm, shoulder, wrists, and back from Officer Legmah's attack.

38. After Officer Legmah's attack, Jaimie McCown, RN diagnosed red marks on Mr. Coleman's right wrist from "handcuff placement" in a use of force situation.

39. Mr. Coleman also asked to press charges against Officer Legmah but was repeatedly denied and prevented from doing so.

40. In the days immediately following the attack, Mr. Coleman was prevented from filing assault charges, contacting his family, and was in fear that Officer Legmah would retaliate.

41. After a few weeks, Mr. Coleman was allowed to contact his family at which time he explained to them what was going on.

42. Officer Legmah approached Mr. Coleman repeatedly at Mr. Coleman's cell laughing that there was nothing Mr. Coleman could do about the attack.

43. Mr. Coleman could not sleep or eat well for days in fear of retribution from Officer Legmah for reporting the attack.

44. Mr. Coleman has residual anxiety from the incident and still feels pain in his face, shoulder, and wrists from being thrown around and having the handcuffs too tight on his wrists.

45. Mr. Coleman has scars over one (1) inch in length on his wrists from the hand cuffs.

### COUNT ONE (1): VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

46. Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

47. The various above captioned corrections officers who interacted and/or treated Mr. Coleman are agents of the Defendant Pickaway County, Ohio acting within the scope and direction of Defendant Pickaway County, Ohio.

48. The various above captioned corrections officers and Defendant Pickaway County, Ohio acted with knowledge or reason to know of facts that would lead a reasonable person to believe that their conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent in injuring Mr. Coleman.

49. The various above captioned corrections officers and Defendant Pickaway County, Ohio acted with a perverse disregard of a known risk in injuring Mr. Coleman.

50. The various above captioned corrections officers and Defendant Pickaway County, Ohio, and their agents, acted under color of state law to deprive Mr. Coleman of rights,

privileges, or immunities secured by the Constitution or laws of the United States, including but not limited to the Fourth Amendment.

51. The various above captioned corrections officers and Defendant Pickaway County, Ohio, and their agents, acted under color of state law to deprive Mr. Coleman of rights, privileges, or immunities secured by the Constitution or laws of the United States, including but not limited to the Eighth Amendment.

52. The various above captioned corrections officers and Defendant Pickaway County, Ohio, and their agents, acted under color of state law to deprive Mr. Coleman of rights, privileges, or immunities secured by the Constitution or laws of the United States, including but not limited to the Fourteenth Amendment.

53. As a direct result of said defendants' actions, Mr. Coleman has suffered, and will continue to suffer, physical and mental injuries, and has incurred, and will incur in the future lost income, transportation expenses, and medical expenses.

54. As a direct result of said defendants' actions, Mr. Coleman suffered permanent physical deformity.

55. Upon information and belief, the various above captioned corrections officers and Defendant Pickaway County, Ohio implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the above captioned offending correction officers.

56. At a pretrial detainee, Mr. Coleman's constitutional right to be free from cruel and unusual punishment was a clearly established constitutional right on July 13, 2020.  See Jones v. Muskegon Cty. (6th Cir. 2010), 625 F.3d 935, 941.

57. The constitutional right to be free from excessive force was a clearly established constitutional right on July 13, 2020.

58. Upon information and belief, Officer Legmah was aware of Mr. Coleman's constitutional right to be free from excessive force.

59. Upon information and belief, Officer Legmah was aware of Mr. Coleman's constitutional right to be free from cruel and unusual punishment.

60. Officer Legmah actively participated in the use of excessive force against Mr. Coleman in the Pickaway County Correctional Institution on July 13, 2020.

61. Officer Legmah actively participated in cruel and unusual punishment against Mr. Coleman in the Pickaway County Correctional Institution on July 13, 2020.

62. Officer Legmah was supervised and/or trained in the use of appropriate force on or before July 13, 2020.

63. Officer Legmah was supervised and/or trained in the use of appropriate punishment on or before July 13, 2020.

64. On July 13, 2020, Lieutenant Burgh and Officer Legmah owed a duty of protection to Mr. Coleman against the use of excessive force.

65. On July 13, 2020, Lieutenant Burgh and Officer Legmah owed a duty of protection to Mr. Coleman against the use of cruel and unusual punishment.

66. Through their actions and omissions stated herein, Lieutenant Burgh and Officer Legmah used excessive force against Mr. Coleman in violation of Mr. Coleman's clearly

established and known Fourth Amendment constitutional rights.  See Graham v. Connor (1989), 490 U.S. 386, 395.

67. Through their actions and omissions stated herein, Officer Lieutenant Burgh and Officer Legmah acted with a sufficiently culpable state of mind equivalent to criminal recklessness in the attack against Mr. Coleman at the Pickaway County Correctional Institution. See Farmer v. Brennan (1994), 511 U.S. 825, 838.

68. Through their actions and omissions stated herein, Lieutenant Burgh and Officer Legmah so recklessly ignored the risk of injury to Mr. Coleman that Lieutenant Burgh and Officer Legmah were deliberately indifferent to the risk of injury to Mr. Coleman.

69. As a direct result of said deprivation of his constitutional rights in violation of 42 U.S.C. §1983, Mr. Coleman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT TWO (2): VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

70. Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

71. Mr. Coleman reasonably believes that the Defendants maintains, actively or by omission, a policy or practice that approves of such unlawful, malicious, and outrageous conduct by their above captioned correction officers in violation of written policies and procedures mandating otherwise.

72. Defendants condoned, encouraged, or participated in the alleged conduct against Mr. Coleman as described above.  See Birrell v. Brown (6th Cir. 1989), 867 F.2d 956, 959.

73. Mr. Coleman reasonably believes that Defendants maintain, actively or by omission, a policy or practice that approves of escalation of violence as a response to inmate disputes such as the aforementioned unlawful, malicious, and outrageous conduct by their above captioned correction officers in violation of written policies and procedures mandating otherwise.

74. In the alternative, Mr. Coleman reasonably believes that Defendants' failure to adequately train their respective correction officers amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said correction officers violated federal and state law in their treatment of Mr. Coleman.

75. In the alternative, Mr. Coleman reasonably believes that Defendants' failure to adequately train their respective correction officers on less violent responses to inmates talking amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said correction officers violated federal and state law in their treatment of Mr. Coleman.

76. In the alternative, Mr. Coleman reasonably believes that Defendants' failure to adequately train their respective correction officers on less violent responses to inmates talking amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said correction officers violated federal and state law in their treatment of Mr. Coleman.

77. The above referenced policies, customs, practices, or omissions of the Defendants played a part in the violation of federal and state law against Mr. Coleman.

78. As a direct result of such above referenced policies, customs, practices, or omissions on the part of the Defendants, Mr. Coleman has suffered, and will continue to suffer, physical

and mental injuries; and has incurred, and will incur in the future, lost income, and medical expenses.

79. As a direct result of said Defendants' actions, Mr. Coleman suffered permanent physical deformity.

80. Mr. Coleman says that such policy or practice has the effect of depriving Mr. Coleman of his constitutional rights in violation of 42 U.S.C. §1983, such that Mr. Coleman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00) as will be more fully proved in either a trial or dispositive motion in this matter.

### COUNT THREE (3): INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81. Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

82. As described above, Officer Legmah knew or should have known that Officer Legmah's actions against Mr. Coleman would result in serious physical and mental and emotional injuries and distress to Mr. Coleman. See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

83. As described above, Officer Legmah's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community. See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

84. As described above, Officer Legmah's actions were the proximate cause of Mr. Coleman's injuries. See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

85. As described above, Mr. Coleman's physical, mental, and emotional injuries suffered are serious and of a nature that no reasonable man could be expected to endure such injuries. See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

86. As described above, Officer Legmah acted with actual malice towards Mr. Coleman.

87. As described above, Officer Legmah acted with a conscious disregard for the safety of Mr. Coleman where there was a significant risk of substantial harm to Mr. Coleman.

88. As a direct result of said Officer Legmah's actions, Mr. Coleman suffered permanent and substantial physical deformity.

89. As a direct result of said Officer Legmah's intentional infliction of emotional distress, Mr. Coleman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT FOUR (4): ASSAULT

90. Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

91. As described above, Officer Legmah assaulted Mr. Coleman when Officer Legmah intentionally offered or attempted, without authority or consent, to harm or offensively touch Mr. Coleman as described above that reasonably placed Mr. Coleman in fear of such contact by Officer Legmah.  See Batchelder v. Young (Ohio App. 11 Dist., 2005), 11th Dist. Trumbull No. 2005-T-0150, 2006-Ohio-6097, ¶ 23, fn. 3.

92. Officer Legmah acted with actual malice towards Mr. Coleman.

93. Officer Legmah acted with a conscious disregard for the safety of Mr. Coleman where there was a significant risk of substantial harm to Mr. Coleman.

94. As a direct result of said Officer Legmah's actions, Mr. Coleman suffered permanent and substantial physical deformity.

95. As a direct result of said Officer Legmah's assault, Mr. Coleman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT FIVE (5): BATTERY

96. Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

97. As described above, Officer Legmah intentionally touched Mr. Coleman's person without Mr. Coleman's consent. See Snyder v. Turk(Ohio App. 2 Dist., 1993), 90 Ohio App.3d 18, 23; Batchelder, supra, at ¶ 23, fn. 3.

98. As described above, Officer Legmah acted with the intent to cause a harmful or offensive contact with Mr. Coleman, and the said harmful contact with Mr. Coleman resulted. See Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99.

99. As described above, Officer Legmah intended to batter Mr. Coleman when Officer Legmah punched Mr. Coleman. See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

100. As described above, Officer Legmah intended to batter Mr. Coleman when Officer Legmah grabbed Mr. Coleman. See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

101. As described above, Officer Legmah intended to batter Mr. Coleman when Officer Legmah threw Mr. Coleman to the ground.  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

102. As described above, Officer Legmah intended to batter Mr. Coleman when Officer Legmah handcuffed Mr. Coleman so tight that Mr. Coleman's hands turned purple, and Officer Legmah refused to loosen said handcuffs.  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

103. As described above, Officer Legmah desired to cause the consequences of Officer Legmah's actions against Mr. Coleman.  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

104. As described above, Officer Legmah believed that the consequences of Officer Legmah's actions against Mr. Coleman were substantially certain to result in substantial harm.  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

105. As described above, Officer Legmah acted with actual malice towards Mr. Coleman.

106. As described above, Officer Legmah acted with a conscious disregard for the safety of Mr. Coleman where there was a significant risk of substantial harm to Mr. Coleman.

107. As a direct result of said Officer Legmah's actions, Mr. Coleman suffered permanent and substantial physical deformity.

108. As a direct result of said Officer Legmah's batteries, Mr. Coleman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

**COUNT SIX (6): SPOLIATION OF EVIDENCE**

109.   Mr. Coleman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

110.   The Defendants knew of pending or probable litigation involving Mr. Coleman. See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

111.   The Defendants knew that litigation with Mr. Coleman was probable.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

112.   Mr. Coleman requested evidence of Officer Legmah's assault and battery.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

113.   Defendants failed to provide Mr. Coleman with evidence of Officer Legmah's assault and battery.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

114.   Upon information and belief, Defendants modified Mr. Coleman's medical records to show medical treatment earlier after Officer Legmah's assault and battery than what actually occurred.

115.   Upon information and belief, Defendants modified Mr. Coleman's medical records to show lesser damages after Officer Legmah's assault and battery than what actually occurred.

116.   Defendants reported the lack of video evidence of the assault on Mr. Coleman.

117.   The Defendants willfully destroyed evidence to disrupt Mr. Coleman's case.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

118. Defendants' destruction of evidence actually disrupts Mr. Coleman's case. See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

119. As described above, the Defendants acted with actual malice towards Mr. Coleman.

120. As described above, the Defendants acted with a conscious disregard for the safety of Mr. Coleman where there was a significant risk of substantial harm to Mr. Coleman.

121. Defendants' destruction of evidence damaged Mr. Coleman in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter. See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

**WHEREFORE**, Mr. Coleman prays this Honorable Court will grant Mr. Coleman the following relief:

A. Joint and several judgments against said defendants in an amount more than Seventy-Five Thousand Dollars ($75,000.00), plus punitive damages, interest including pre-judgment and post judgment interest, costs, attorneys' fees;

B. An award of attorneys' fees against said defendants in favor of Mr. Coleman under 42 U.S.C. § 1988(b);

C. An award of expert fees against said defendants in favor of Mr. Coleman under 42 U.S.C. § 1988(c);

D. Judgment declaring Ohio Department of Medicaid's subrogation and/or reimbursement interest in any award herein, less Mr. Coleman's collection costs thereof, under the applicable law given medical benefits that may have been paid or may be paid by Ohio Department of

Medicaid on the behalf of Mr. Coleman related to his injuries alleged herein and/or judgment barring any such recovery unless and until Mr. Coleman is made whole; and

E. For all other relief, as may be necessary and appropriate and/or to which Mr. Coleman is entitled, as a matter of law and/or equity, including but not limited, reasonable attorneys' fees, costs, and interest.

Respectfully submitted,

TOMPKINS, SELPH, & ASSOCIATES, LTD.

/s/ *Theran J. Selph, Sr.*
Theran J. Selph, Sr.     (0079376)
Aaron Tompkins          (0085224)
PO Box 341318
Columbus, Ohio 43234-1318
(614) 453-0971/(866) 519-5298 (facsimile)
tselph@selphlaw.com
atompkins@selphlaw.com
*Counsel for Plaintiff Roger Coleman*

## JURY DEMAND

Pursuant to Rule 38, of the Federal Rules of Civil Procedure, Mr. Coleman hereby requests a trial by jury of eight (8) persons on all issues triable by a jury.

/s/ *Theran J. Selph, Sr.*
Theran J. Selph, Sr.     (0079376)
*Counsel for Plaintiff Roger Coleman*

###