UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROGER COLEMAN,

      Plaintiff,

                            **Case No. 21-cv-3936**

    v.                     **JUDGE EDMUND A. SARGUS, JR.**

                            **Magistrate Judge Kimberly Jolson**

CORRECTIONS OFFICER
LEGMAH, *et al.*,

      Defendants.

## OPINION AND ORDER

This matter arises on Defendant's Motion for Summary Judgment.  (ECF No. 39.)  For the reasons stated below, Defendant's Motion is **DENIED**.

### I.      Procedural Background

On July 13, 2021, Plaintiff Roger Coleman filed a complaint in the Southern District of Ohio against twenty-five unnamed corrections officers, and the Ohio Department of Medicaid related to the alleged actions of Corrections Officer Legemah[1] and Lt. Byrd while Mr. Coleman was incarcerated at Pickaway Correctional Institute in July 2020.  (ECF No. 1.)  After substantial litigation only Plaintiff's "personal capacity" 42 U.S.C.§ 1983 claim against Officer Legemah remains.  (ECF No. 23.)

Defendant filed the instant Motion for Summary Judgment on May 19, 2023.  (ECF No. 39.)  Plaintiff did not respond until June 16.  (ECF No. 40.)  Exactly two weeks later, on June 30,

---

[1] In the parties' earlier briefings and the Court's previous orders, Officer Legemah was referred to as "Officer Legmah."  As the parties referred to the officer as "Legemah" in their most recent filings, the Court will do the same.  However, the Court will not alter the case caption.

Defendant replied. (ECF No. 41.)  In his reply, Defendant argued that Plaintiff's response should be stricken from the record as non-compliant with the Court's local rules.  In response to this argument, Plaintiff filed what he styled "Motion for Continuance" on July 10. (ECF No. 42.) Defendant responded on July 13, urging the Court not to grant Plaintiff's motion.  (ECF No. 43.)

## II.    Factual Background

In July of 2020, Plaintiff Roger Coleman was incarcerated at the Pickaway Correctional Institute (PCI).  (ECF No. 32, at 16.)  On July 13, Coleman was in the Institutes' lobby area when he encountered Defendant Officer Legemah.  (*Id*., at 17.)  Coleman says the two spoke about Coleman's failure to follow the Institute's required Covid face mask protocols.  (*Id*., at 17–18.)  Officer Legemah contends that the two talked about prisoners in the rec yard.  (ECF No. 33, at 75.)  Officer Legemah then began to escort Coleman from the common area, leading him back to his cell.  (ECF No. 32, at 18.)  While en route, the parties passed through a locked door into a short corridor.  (*Id*.);(ECF No. 39, Exhibit 1.)  Also in the corridor was Brandon S. Pyle, another inmate of PCI.  (ECF No. 39, Exhibit 1.); (ECF No. 40, Exhibit B.)  Pyle, along with a security camera, witnessed the following events.

Officer Legemah states that Coleman started acting agitated, even before entering the corridor.  (ECF No. 33, at 72.)  He avers that Coleman became argumentative, and that Coleman threatened to knock him out.  (*Id*., at 72–73.)  However, Pyles disputes this, and the security cameras do not capture audio.  (ECF No. 40, Exhibit B, at 2.)  Officer Legemah avers that Coleman then took what he interpreted to be a fighting stance.  (ECF No. 33, at 92.)  At that point, Officer Legemah made physical contact Coleman.  (ECF No. 39, Exhibit 1.)  The officer testified by deposition that he merely pushed Coleman away to create distance between the two

of them.  (ECF No. 33, at 83.)  However, Plaintiff argues the video shows that Officer Legemah punched Coleman in the lower face/neck area.  (ECF No. 40, at 17.)

Both Legemah and Coleman agree that, after making contact, Legemah ordered Coleman to face the wall and put his hands behind his back.  (ECF No. 33, at 88); (ECF No. 32, at 88.) Coleman turned to face the wall, but kept his arms up, above his head.  (ECF No 39, Exhibit 1.) Officer Legemah responded by grabbing Coleman's shoulder, tripping him, and sending Coleman to the ground.  (*Id*.)  The video shows that Officer Legemah proceeded to handcuff Coleman and lift him, by his handcuffs, up from the concrete.  (*Id*.)  The two then walk down the hallway.  (*Id*.)

According to Coleman, the cuffs Officer Legemah placed on him were so tight that his "hands started turning purple."  (ECF No. 32, at 11.)  Coleman states he screamed at Officer Legemah to loosen his restraints, but that he was rebuffed.  (*Id*., at 10–11.)  Officer Legemah does not recall any screaming and claims he didn't know Coleman's cuffs were too tight.  (ECF No. 33, at 107, 114–14.).  In any event, the restraints were taken off roughly a minute and thirty seconds after they were put on.  (ECF No. 32, at 112.)  After Officer Legemah and Coleman exited the hallway, they were met with Officer Kellenberger.  (*Id*.)  Officer Legemah released Coleman into Officer Kellenberger's custody.  (*Id*., at 94.)  Officer Kellenberger took the cuffs off Coleman. (*Id*.)

After the incident, per the jail's use of force protocols, a nurse was assigned to examine Coleman.  She observed "two small red marks in right wrist r/t handcuff placement.  No deformities on shoulder or anywhere else."  (ECF No. 33, Exhibit 3, at 5.)  Coleman complained of pain in his arm, as well as in his lower back and shoulder.  (*Id*.)  Later that night, another nurse observed Coleman.  She noticed that the "[r]ight lower arm [was] slightly swollen," and

that Coleman had "pink skin on wrists." (*Id*., at 3.)  She administered ibuprofen, regular icing, bandaged Coleman's arm, and put it in a sling. (*Id*.)  A couple days later, on July 16, Coleman was examined by another of the jail's medical staff.  During this examination, Coleman complained of pain in his right shoulder and rated his pain as a 7 out of 10.  (ECF No. 38, at 16.) The examiner noticed swelling and a decreased range of motion in Coleman's right arm and shoulder.  (*Id*., at 17.)  Coleman's right hand was "ecchymotic" and there was a pink bruise on his right wrist.  (*Id*.)  Coleman was X-rayed but no evidence of fractures was found.  (*Id*., at 19.) However, Coleman was given an exercise plan and told to keep his arm in a sling. (*Id*., at 17.)

Coleman was examined again on July 21.  (*Id*., at 23.)  The jail's medical provider noted a contusion to Coleman's right wrist and muscle strain in his right shoulder, but also that he had full range of movement.  (*Id*.)  A couple days later, on July 23, Coleman was transferred to Belmont Correctional Institute.  There, as part of the transfer process, Coleman was medically examined.  This examination showed no injuries, and Coleman complained of none.  (*Id*., at 38–40.)  While at Belmont, Coleman sought and received treatment for other injuries, including an ACL tear.  (ECF No. 32, at 42–43.)  Coleman was released from Belmont in 2022 but did not seek treatment at that time.  (*Id*., at 43.)

Coleman was subsequently incarcerated and released from custody on May 28, 2023.  (ECF No. 40, at 7.)  Shortly thereafter, on June 13, 2023, Coleman sought a medical examination by Dr. Bruce S. Kay, a doctor with BSK Orthopedics, LLC.  (ECF No. 42, Exhibit 1.)  Dr. Kay concluded that Officer Legemah likely caused a partial rotator cuff tear to Coleman's right shoulder.  (*Id*., at 2.)  Coleman has been scheduled for an MRI.  (ECF No. 40, at 8.)

On July 21, 2020, Captain J. Pollard conducted an investigation into Legemah's use of force. (ECF No. 40, Exhibit A.)  Pollard's report came to several conclusions about the incident.  He

noted inconsistencies in Officer Legemah's story and found that, despite having the opportunity to do so, "Officer Legemah never created any distance between him and inmate Coleman A739451." (*Id.*, at 2–3.) Further, Captain Pollard concluded that "[t]he force utilized by Officer G. Legemah of forcing inmate Coleman A739451 doesn't appear to have been necessary to deescalate the situation." (*Id.*, at 3.) Under the section titled "[w]as force appropriate under the circumstances?," Captain Pollard checked "[n]o." (*Id.*)

### III.    Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain

5

from making credibility determinations or weighing evidence).  Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).  It is with this standard in mind that the instant motions will be decided.

The moving party bears the burden of production first.  "The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Plaintiff's claims."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party then must present sufficient evidence from which a jury could reasonably find for it. *See Anderson Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  The court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

## IV.    Analysis

Before the Court are two questions.  The first and easiest is whether to accept Plaintiff's Memo Contra as timely filed.  And second is whether Defendant Officer Legemah is entitled to summary judgment on Plaintiff's remaining Section 1983 claim.  The Court will take each question in turn.

### a.  Plaintiff's Memo Contra

Plaintiff asks the Court to "accept his Memo Contra Defendant Correction Officer Legemah's Motion for Summary Judgment (Doc. 40) as timely filed."  (*Id*., at 1.)  Defendant

6

requests the Court "strike Mr. Coleman's memorandum in response due to it being untimely and beyond the page limitation permitted under local rule." (ECF No. 43, at 1.) Defendant also complains about the memo's spacing and number of footnotes. (ECF No. 41, at 8.)

The Court's local rules state that "[a]ny memorandum in opposition shall be filed within twenty-one days after the date of service of the motion." L.R. 7.2(a)(2). Defendant filed their Motion for Summary Judgment on May 19, 2023 (ECF No. 39), and Plaintiff submitted their Memo Contra on June 16, 2023 (ECF No. 40). Defendant is correct that Plaintiff filed their memo a week after the deadline to do so. Further, despite its 28 pages, Plaintiff's memo does not contain a table of contents as required by the Court's local rules. L.R. 7.2(a)(3). The memo also violates the Court's spacing rules. L.R. 5.1(a). Plaintiff's memo is out of compliance with the Court's rules.

However, despite Plaintiff counsel's failure to follow its local rules, the Court will not strike Plaintiff's memo contra. The resultant harm to Defendant was minimal, as Plaintiff's filing was only a week late. The delay did not worsen Defendant's position and has not significantly slowed the resolution of this case. Further, the Court prefers to settle controversies on the merits, not on counsel's ability to follow the Court's rules. Counsel is admonished for the non-compliant filing, but the Court will consider it.

### b. Excessive Use of Force

Defendant argues that he is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 excessive use of force claim. (ECF No. 39, at 10.) Plaintiff contends that Legemah is not entitled to summary judgment. (ECF No. 40, at 9.)

To succeed on a 1983 claim, a plaintiff "must demonstrate that a person acting under color of state law 'deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011) (Citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).  The Eight Amendment to the United States Constitution commands that the government and its agents shall not inflict "cruel and unusual punishments."  U.S. Const. amend. VIII. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "There is an objective component and a subjective component to an Eighth Amendment claim." *Cordell v. McKinney*, 759 F.3d 573, 580 (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir.2013)). First, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "In *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010), the Sixth Circuit held that 'even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than de minimis for an Eighth Amendment claim to go forward.'"  *Bullocks v. Hale*, No. 1:18-cv-288, 2019 U.S. App. LEXIS 66674, *16 (S.D. Ohio, May 23, 2019).  "This is a 'contextual' inquiry that is 'responsive to contemporary standards of decency.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). Second, "[t]he subjective component focuses on the state of mind of the prison officials." *Id*. "[T]he core judicial inquiry is. . .whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6–7 (1992).

8

Thus, the first question before the Court is whether the injury Coleman sustained was sufficiently serious.  Defendant argues that none of the injuries Coleman suffered were more than de minimis.  In response, Plaintiff points mainly to Coleman's own statements, medical reports from PCI, and the report of Dr. Kay.  (ECF No. 40.)  In his report, Dr. Kay found Coleman, three years after the incident, to be suffering tendinitis in the right wrist and "[a] De Quervain's tendinitis in the right shoulder."  (ECF No. 40, Exhibit 1, at 3.)  The doctor also noted that Coleman  "has a chronic sprain and strain and needs further studies to evaluate for possible labral or rotator cuff injury to the right shoulder."  (*Id*.)

Defendant takes issue with Plaintiff's attempt to introduce Dr. Kay's report.  He notes several issues with the report's timing and lack of conformity to the Court's local rules.  These objections are as follows:

> the disclosure date to disclose expert witnesses and expert opinion was January 31, 2023. [Doc. 26 at PageID # 130]. Fact discovery in this matter closed on March 14, 2023, even though the undersigned did informally agree to allow Mr. Coleman's counsel to depose Officer Legemah on April 14, 2023. [*Id*.]. At no time did Mr. Coleman produce or disclose to Officer Legemah or his counsel a report from Dr. Bruce S. Kay, M.D., opining that in his professional medical opinion that (i) Mr. Coleman suffered a rotator cuff tear and (ii) that it was his professional medical opinion to a degree of medical probability that the purported rotator cuff tear was directly and proximately caused by Officer Legemah's actions. The deadline for doing so has long since passed. Nor is Dr. Kay identified as a potential witness in Mr. Coleman's initial disclosures served upon Defendant.

(ECF No. 41, at 7.) (modifications in original)

Plaintiff argues that the report is admissible.  He does not engage with many of Defendants' arguments.  However, Plaintiff states that "[i]n Mr. Coleman's initial disclosures, he reserved the right to supplement disclosure of additional witnesses."  (ECF No. 42, at 3.)  Plaintiff further notes that Coleman was just recently released from jail on May 28, 2023.  (*Id*.)  As an incarcerated individual, Plaintiff contends Coleman "simply could not walk out of prison

to see an independent medical professional." (*Id*.) Once Coleman was released, he immediately sought medical attention, resulting in the report from Dr. Kay. (*Id*.) However, as noted above on page four, Coleman was previously released from prison at the end of 2022. He did not seek an independent medical opinion at that time.

The Court will not consider Dr. Kay's expert report. Plaintiff counsel did not follow the Court's rules and procedures in filing this report. Despite knowing that his client was in custody, and the fact that this case has been pending for over two years, Plaintiff counsel did not move this Court for leave to have an independent expert to examine Coleman in prison or for an extension of time. The June 16, 2023, filing was the first time Plaintiff even gave notice of the report's existence. At this late stage, Defendant has no expert of his own to rebut the doctor. Admitting Kay's report would result in prejudice and surprise to Defendant. The Court excludes the report.

Nonetheless, even without considering this report, Plaintiff has carried his burden. Considering Coleman's testimony and the results from his checkups in PCI, including the prescription of a sling, therapeutic exercises, and other remedies, Plaintiff has shown more than de minimis injury. (ECF No. 32, at 9–11, 33, 35–36, 49, 92–94, 97–99); (ECF No. 33, Exhibit 3, at 5.); (ECF No. 38, at 16–17, 23, 38–40, 42–43). As such, he has satisfied the objective component of his Eighth Amendment claim. The Court will move on the subjective.

The second question before the Court is whether the force Officer Legemah used was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6–7 (1992). Defendant argues "[s]ubjectively, Officer Legemah's action in shoving Mr. Coleman was a force applied so as to maintain or restore discipline." (ECF No. 39, at 11.) Defendant contends:

10

> Mr. Coleman was disobeying Officer Legemah's direct order to proceed to the outside recreation area, and instead, took a stance facing Officer Legemah that Officer Legemah reasonably perceived as a fighting stance. Officer Legemah shoved Mr. Coleman to create space between them, which is a force applied to maintain or restore discipline. No reasonable individual can interpret Officer Legemah's shove as a malicious or sadistic attempt to cause Mr. Coleman harm or injury.
>
> (*Id.*, at 11–12.)

Plaintiff, however, argues that Legemah acted maliciously.  (ECF No. 40, at 10–11.) Further, despite Defendant's claim, Plaintiff contests the argument that he was non-compliant and disobedient.  (*Id.*, at 10.)  Plaintiff has marshalled both his own and Pyles recollections in favor of this conclusion.   (ECF No. 40, Exhibit B, at 2–4.); (ECF No. 40, Exhibit A, at 3.)  He explains "Mr. Coleman and Mr. Pyles testify that Mr. Coleman complied with Officer Legemah's order to get on the wall such that the only conclusion is that Officer Legemah maliciously injured a compliant prisoner."  (ECF No. 40, at 10–11.)  Plaintiff also points to Captain Pollard's use of force investigation, which found Legemah's actions to be not "necessary to deescalate the situation."  (ECF No. 32, at 105.)

Defendant states "the video evidence on the record clearly and blatantly contradicts Mr. Coleman's allegations that (i) Officer Legemah 'punched' him in the face and/or (ii) 'without provocation.'"  (ECF No. 39, at 10.)  The Court disagrees.  The video in question does show the incident.  But the video does not resolve whether Officer Legemah punched Coleman, in the lower face/neck, without provocation.  This is a matter for the jury to decide.  Each side has produced ample evidence in favor of their position.  The Court finds a genuine issue of material fact as to Officer Legemah's subjective mentality in applying force against Coleman.  As such, Summary Judgment is **DENIED**.

### c. Qualified Immunity

Defendant argues that the Court must grant him summary judgment because Officer Legemah is entitled to qualified immunity. (ECF No. 39, at 18.) Plaintiff disagrees. (ECF No. 40, at 26.)

Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73 (2017) (quoting *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (per curiam)). "Determining whether government officials are entitled to qualified immunity generally requires two inquiries: First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010) (internal quotations omitted). "To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'"" *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

This Court, in its September 23, 2022, opinion, found that Officer Legemah was not entitled to qualified immunity. (ECF No. 23.) Here, the Court comes to the same conclusion. As detailed in the section above, viewing the facts in the light most favorable to him, Plaintiff has established an Eighth Amendment Violation. As such, the next question before the Court is whether that right was clearly established.

Defendant argues that Officer Legemah would have no reason to know that handcuffing a prisoner too tightly could violate their constitutional rights. He states, "While it is clearly

established that improper handcuffing can result in a constitutional violation, there is no evidence that Officer Legemah had reason to know that his action in handcuffing Mr. Coleman was contrary to established law." (ECF No. 39, at 19.)  Defendant does not argue that Officer Legemah is entitled to qualified immunity in regard to Coleman's shoulder injury, or that Officer Legemah was not on notice that striking a compliant prisoner could violate their constitutional rights.

Plaintiff responded by pointing to Officer Legemah's training.  He contends that "[a]s a corrections officer, Officer Legemah received significant training from ODRC, including specific training about the Eighth Amendment's prohibition against cruel and unusual punishment." (ECF No. 40, at 27.)  Defendant did not respond to this argument.  Plaintiff has created a genuine issue of material fact as to whether Officer Legemah used "sadistic" or "malicious" physical force.  *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Plaintiff has carried their burden of showing a genuine issue of fact as to qualified immunity.  Defendant's Motion for Summary Judgment is **DENIED**.

## V.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment. This case is to remain open.

    **IT IS SO ORDERED.**

**7/26/2023**                                      **s/Edmund A. Sargus, Jr.**
**DATE**                                           **EDMUND A. SARGUS, JR.**
                                                   **UNITED STATES DISTRICT JUDGE**